[Civ. No. 15710. First Dist., Div. One. Feb. 16, 1954.]

MARCHESE BROS., Respondent, v. A. LYON AND SONS et al., Appellants.

Curtis H. Palmer and J. Albert Hutchinson for Appellants.

Gallagher, Ruffo & Rainville and Albert J. Ruffo for Respondent.

PETERS, P. J.—Plaintiff is a corporation with its principal place of business in Santa Clara County. Defendants are a partnership with their principal place of business in Los Angeles. Two of the partners, A. Lyon and William Lyon, reside in Los Angeles; a third, Leon Lyon, resides in Kentucky. Plaintiff purchased 100 barrels of brandy from defendants subject to an express warranty. After the merchandise had been delivered and the purchase price paid, plaintiff brought this action in Santa Clara County, claiming that the brandy was not as warranted, offering to return the quantity still on hand and demanding the return of the purchase price of the quantity still on hand, plus expenses incurred. Defendants moved for a change of venue to Los Angeles County on the ground of residence and on the ground that the contract was made in that county. The motion was denied. Defendants appeal.

The pertinent facts are set forth in the complaint and affidavits filed on the motion. The facts are not in dispute. On May 16th and 24th, 1951, appellants sold two lots of imported brandy to respondent. Each of the invoices for these two shipments, which were sent from appellants' Los Angeles office to respondent in San Jose, contained an express warranty to the effect that "This merchandise is guaranteed to have Federal ATU [Alcohol Tax Unit] approval as 20 year Old Brandy and pass all Food and Drug Administration regulations." The complaint alleges that when the brandy was received it carried the necessary federal approval of its sale as 20-year-old brandy, but that, about April 15, 1952, the Alcohol Tax Unit rescinded this approval, because, according to the information and belief of respondent, such

agency found that the brandy was not 20-year-old brandy. Respondent thereupon served on appellants a notice of rescission, offering to restore to them the balance of the brandy still on hand, and demanding the return of the purchase price of that amount of the brandy. Thereafter, this action was brought in Santa Clara County.

The affidavit of A. Lyon, one of the appellants, avers that after the brandy was imported by appellants, they authorized one Philip Marshall to solicit orders for it on a commission basis; that about May 16, 1951, Marshall called at the Los Angeles office of appellants and stated that he had an order from respondent for 50 barrels of the brandy, on condition that appellants would make the express warranty above quoted; that appellants agreed to make the warranty and accepted the order in Los Angeles County; that appellants then issued an invoice and mailed it, with a sight draft attached, to respondent in San Jose. The second sale of 50 barrels on May 24, 1951, is averred to have occurred under similar circumstances.

The affidavit of Philip Marshall avers that he is a licensed broker of alcoholic beverages in Los Angeles; that on May 16th and 24th, 1951, respectively, he received in the mail on behalf of respondent, he believes from one Ernest Baer of San Francisco, two orders, directed to appellants, for the brandy, which orders stated that they were made on condition that appellants would make the warranty above quoted; that he presented the orders to appellants at their Los Angeles office; that appellants then agreed to sell the brandy subject to that express warranty; that he received a commission on the two sales, which he divided with Baer.

The affidavit of Norman Hanak, an office employee of appellants who was present during the negotiations with Marshall over the warranty, corroborates Lyon and Marshall, and, in addition, avers that the brandy at the time of the two sales was stored in San Francisco; that the terms of the orders were the billing of warehouse receipts with sight drafts attached directed to respondent's bank in San Jose; that after the invoices and sight drafts were drawn up they were taken by appellants to a Los Angeles bank with instructions to mail them to respondent's bank in San Jose.

The counteraffidavit was filed by Paul Marchese, president of respondent. He avers that he was contacted in San Jose by Ernest Baer; that Baer, on behalf of appellants, offered to sell the 20-year-old brandy; that he made two purchases

through Baer, each sale carrying the express warranty; that the merchandise was delivered to respondent in San Francisco and payment was made pursuant to the agreement by sight draft at respondent's bank in San Jose. This affiant avers that his sole contact in the deal was with Ernest Baer; that he never dealt with Marshall; that all matters relating to the two purchases occurred in Santa Clara County; that respondent's obligation to pay arose and was to be performed in Santa Clara County.

Thus, the factual situation is simply one where Baer contacted respondent in San Jose and secured orders for the brandy on condition appellants would make the express warranties above quoted. Baer forwarded the orders to Marshall in Los Angeles. Marshall brought the orders to appellants in Los Angeles. In Los Angeles appellants accepted the orders after agreeing to make the warranties. Invoices and sight drafts were then prepared in Los Angeles and mailed in Los Angeles by a Los Angeles bank to respondent's bank in San Jose, where they were paid. The merchandise was delivered in San Francisco.

It is respondent's theory that Santa Clara County is a proper county for the trial of the action either because, under section 395, subdivision (1), of the Code of Civil Procedure, appellants contracted to perform an obligation in that county, or the contracts were there entered into. Appellants dispute both contentions, urging that under the facts they are entitled to have the action tried in Los Angeles County.

Both sides agree that section 395, subdivision (1), of the Code of Civil Procedure is the controlling section. It provides: "In all other cases, except as in this section otherwise provided, and subject to the power of the court to transfer actions or proceedings as provided in this title, the county in which the defendants, or some of them, reside at the commencement of the action, is the proper county for the trial of the action. . . . When a defendant has contracted to perform an obligation in a particular county, either the county where such obligation is to be performed, or in which the contract in fact was entered into, or the county in which the defendant, or any such defendant, resides at the commencement of the action, shall be a proper county for the trial of an action founded on such obligation, and the county in which such obligation is incurred shall be deemed to be the county in which it is to be performed unless there is a special contract in writing to the contrary. . . ."

■ Thus, the section lays down the following general rules for the venue of actions falling within its provisions:

1. The general rule is that actions shall be tried in the county where the defendant or some of them reside at the commencement of the action;

2. But where the action is based upon a contract whereby the *defendant has contracted to perform an obligation in a particular county,* then such action may be tried in (a) the county where the obligation is to be performed; (b) **the** county where the contract was entered into; (c) the county of defendant's residence. In determining where a contract is to be performed, in the absence of a special contract in writing to the contrary, the county where the obligation was incurred shall be deemed to be the county where it is to be performed.

Although appellants contend that the instant case is one in implied or *quasi* contract for rescission or restitution and is therefore transitory, we think that the action is basically one for breach of an express written warranty. No promise implied in law is involved. The rescission and restitution pleaded are but the remedies sought for the claimed breach of the express contract. It is clear, therefore, that the contract provisions of the section are here applicable.

Under these provisions it must be determined whether the contract was entered into in Santa Clara County, and, if not, whether there was a special contract on the part of appellants to perform in that county.

It is quite clear that the contract was not entered into in Santa Clara County. ■ The facts as set forth in the affidavits are not in conflict. The question as to where the contract was entered into thus becomes one of law and not of fact. While the complaint alleges that the contract was entered into and was to be performed in Santa Clara County, such allegations are conclusions of law and are not binding on the trial or appellate courts. (*Erwin* v. *Cee-Tee Const. Co.,* 114 Cal.App.2d 364, 369 [250 P.2d 287]; *Wilson* v. *Hoffman,* 81 Cal.App.2d 664, 666 [184 P.2d 951].)

■ The uncontradicted facts show, as a matter of law, that the contract was entered into in Los Angeles. Baer solicited orders for the brandy from respondent in San Jose. If it be assumed that Baer possessed the power to accept orders that would be binding on appellants (a fact which does not appear), no such acceptance was made by him. Respondent

made a countersuggestion—we will buy so many barrels, but only on condition that the seller will agree to make the requested warranty. This was obviously at least a counteroffer, if not the original offer. Baer sent this countersuggestion to Marshall in Los Angeles. Marshall, in Los Angeles, submitted it to appellants, who, in Los Angeles, accepted it. This acceptance was indicated not only by what was said to Marshall, but by the invoices, containing the express warranty and the terms of the sale, and the other documents, all executed in Los Angeles and mailed in that city. ■ In cases where contracts are not made in the presence of the contracting parties, the contract is generally deemed made where the "last event" necessary to make it a binding agreement occurs. That, normally, is where the unconditional acceptance of the offer is made or placed in the mail. (*Johnson* v. *Banta,* 87 Cal.App.2d 907 [198 P.2d 100]; *Ivey* v. *Kern County Land Co.,* 115 Cal. 196 [46 P. 926].) It must be held that the contract here involved was entered into in Los Angeles.

■ Nor was there any special contract in writing that appellants should perform any part of their obligation in Santa Clara County. The contract was entered into in Los Angeles, and the merchandise was delivered in San Francisco. The most that can be spelled out of the admitted facts is that respondent—the plaintiff in the action—was to perform, by paying the sight drafts, in Santa Clara County. ■ But section 395, subdivision (1), does not apply to the obligations of the plaintiff. It provides that "When a defendant [the appellants here] has contracted to perform an obligation in a particular county" such county may be the venue for an action for breach of that contract. No such obligation was here incurred by appellants.

■ Appellants contend that even the provision requiring them to deliver the brandy "F.O.B." San Francisco does not constitute a special contract to perform in that county. Something can be said for this position. (*Johnson* v. *Banta,* 87 Cal.App.2d 907 [198 P.2d 100]; *Southern Pac. Co.* v. *Hyman-Michaels Co.,* 63 Cal.App.2d 757 [147 P.2d 692].) But even if appellants did contract to perform part of their obligations in San Francisco, a point we do not have to decide, the result would be that San Francisco would, under section 395, subdivision (1), become *a* county for the trial of the action, not *the only* county for said trial. Los Angeles, as either the county of appellants' residence or the county where

the contract was made, is also, under the section, a proper county for the trial. But Santa Clara County cannot qualify at all as *a* county in which the action may be tried. For these reasons the motion for change of venue to Los Angeles County should have been granted.

The order appealed from is reversed.

Bray, J., and Wood (Fred B.), J., concurred.